### IN THE UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| CHANEL MARIE REYNOLDS,<br>as Special Administrator and Personal<br>Representative of the Estate of Timothy William<br>Dewees | Case No.: |
| Plaintiffs, | **NOTICE OF REMOVAL OF**<br>**CIVIL ACTION** |
| v. | |
| CENTURY ARMS, INC., AND<br>CENTURY INTERNATIONAL ARMS, INC.;<br>and MCGALLIARD GUNS AND MORE | **DEMAND FOR A JURY TRIAL** |
| Defendants. | |

### DEFENDANTS CENTURY ARMS, INC., AND CENTURY INTERNATIONAL ARMS, INC.'S NOTICE OF REMOVAL AND DEMAND FOR A JURY TRIAL

To:    The Honorable Judges of the United States District Court
for the Southern District of Indiana, Indianapolis Division

**PLEASE TAKE NOTICE THAT,** Defendants Century Arms, Inc. ("Century Arms") and

Century International Arms, Inc. ("Century International") (collectively "Century Defendants"), by

and through their undersigned counsel, hereby submit this Notice of Removal of the above-entitled

action from the Delaware County Circuit Court, Indiana to the United States District Court for the

Southern District of Indiana, Indianapolis Division.  By their petition, Century Defendants give

notice of the removal of this action. This notice of, and petition for, removal is made pursuant to 28

U.S.C. §§ 1332, 1441, and 1446, and is proper and appropriate based upon the following:

### I. INTRODUCTION.

1.    Century Defendants desire to exercise their right under the provisions of 28 U.S.C.

§§ 1441, *et seq.*, to remove this case from the Delaware County Circuit Court, where this case was

pending under the case style of *Chanel M. Reynolds, Spec. Admin. & Pers. Rep. of the Estate of Timothy W.*

*Dewees v. Century Arms, Inc., Century International Arms, Inc., McGalliard Guns and More*, Case No. 18C05-

2501-CT-000014.

2.    Specifically, 28 U.S.C. § 1441 provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

3.    This wrongful death lawsuit purportedly arises from a firearm shooting incident on February 25, 2023 when a 9mm Canik TP9SF Elite model pistol ("the subject Pistol") allegedly unintentionally fired, striking and killing Timothy Dewees ("Decedent"). (See Ex A, Plt. Compl., ¶ 52.) The summons was issued on or about January 30, 2025, and the registered agent for Defendants was served with a copy of Plaintiff's Summons and Complaint on or about February 18, 2025. (See Ex. B, Summons; Ex. C, Service of Process 2/18/2025.) This civil action has not been tried.

4.    Century Defendants voluntarily appear in this action, but reserve all objections, motions, arguments, and defenses, whether contractual or otherwise, to Plaintiff's Complaint. A responsive pleading or motion will be filed in accordance with Rule 81(c)(2) of the Federal Rules of Civil Procedure.

5.    Copies of all process, pleadings, orders served upon Defendants along with all documents filed in the state court action are collectively attached to this Notice of Removal. (See Ex. D, State Court Docket Materials.)

## II.    NOTICE OF REMOVAL IS TIMELY.

6.    The time in which Century Defendants are required by the laws of the State of Indiana, by the Indiana Rules of Civil Procedure, and/or by the Rules of the Delaware County Circuit Court to move, answer, or otherwise plead in response to Plaintiff's Complaint has not elapsed.

7.    Pursuant to the requirements of 28 U.S.C. § 1446(b) and Rule 11 of Federal Rules of Civil Procedure, this Notice of Removal is timely filed within thirty (30) days after the receipt, through   service   or   otherwise,   of   a   copy   of   the   initial   pleading   setting forth the claim for relief upon which Plaintiff's action is based.

## III.    DIVERSITY JURISDICTION EXISTS.

8.    Removal is authorized by 28 U.S.C. §1441, and is based on the United States District Court's original jurisdiction of the case pursuant to 28 U.S.C. § 1332 because (a) the amount in controversy exceeds $75,000; (b) Defendant McGalliard Guns and More ("McGalliard") has been fraudulently joined and, as further explained below, cannot be considered in the diversity jurisdiction determination; and (c) there is diversity of citizenship between Plaintiff and Defendants Century Arms and Century International.

### A.    The Amount in Controversy Exceeds $75,000.

9.    Plaintiff's Complaint does not specify an amount of damages being sought, but based on a preponderance of the evidence, the $75,000 amount-in-controversy requirement found in 28 U.S.C. § 1332 is satisfied in this instance.

10.    A removing defendant may discharge plaintiff's burden of establishing the amount in controversy by demonstrating the amount is met by a preponderance of the evidence which means proof to reasonable probability that jurisdiction exists. Shaw v. Dow Brands, Inc., 994 F.2d 364, 366 (7th Cir. 1993). The amount in controversy is determined at the time the action is removed to

federal court. <u>Crowder Lawn & Garden v. Federated Life Ins. Co.</u>, No. 1:09-CV-0581-JMS-DML, 2010 WL 4923898, at *3 (S.D. Ind. Nov. 29, 2010) (citing <u>Oshana v. Coca-Cola Co.</u>, 472 F.3d 506, 511 (7th Cir. 2006)). To make this determination, the proponent of federal jurisdiction must make a good-faith estimate that the jurisdictional amount has been met. <u>Meridian Sec. Ins. Co. v. Sadowski</u>, 441 F.3d 536, 541 (7th Cir. 2006). This estimate can be met by using, among other evidence, calculations from the complaint's allegations, reference to the plaintiff's informal estimates; introducing evidence in the form of affidavits from defendant about how much it would cost to satisfy the plaintiff's demands, or another better way to establish what the controversy amounts to including what a judgment may be worth to plaintiff. <u>Id.</u> at 542.

11.    Wrongful death actions frequently amount to greater than $75,000.00 in damages. In <u>Knierim v. U.S. Gov't Dep't of Navy</u>, 802 F. Supp. 2d 965 (S.D. Ind. 2011), a wife of deceased motorist, who was personal representative of motorist's estate, brought wrongful death action against the Navy, and was entitled to recover over $1,372,500 in damages. In <u>Kuba v. Ristow Trucking Co.</u>, 811 F.2d 1053 (7th Cir. 1987), the District Court for the Northern District of Indiana, entered judgment upon jury verdict finding that truck driver and, vicariously, his employer, had negligently caused Decedent's death in truck collision, and assessed damages of $250,000. In <u>Indiana State Police v. Est. of Damore</u>, 194 N.E.3d 1147 (Ind. Ct. App. 2022), Decedent motorcyclist's mother, as personal representative of his estate, brought a claim for wrongful death claim against the State Police and the State after motorcyclist was fatally injured following a vehicle accident involving a State Police trooper and the trial Court awarded her more than $700,000.00 in damages.

12.    Here, Plaintiff brings a wrongful death action claiming damages including loss of love, care, affection, loss of society, companionship, loss of gifts and valuable gratuities, loss of financial support, loss of services, costs of administration, funeral and burial expenses, and all other

forms of damages contemplated under the law. (See Ex. A, Plt. Compl. ¶¶ 52, 63, 86, 95, 105, 117, 122 and 132.)

13.     While damages in this matter are capped at $300,000, plus costs for medical, hospital, funeral expenses, and burial expenses (see IN Code § 34-23-1-2), and no formal demand has been made by Plaintiff to date to resolve this matter, discussions between counsel for Century Defendants and Plaintiff's counsel have indicated that Plaintiff is seeking damages and a possible resolution, if at all, at or near the cap amount.

14.     Absent such cap on damages, and upon information and belief, Decedent was 26 years old at the time of death. Based upon an average retirement age of 65, Decedent could reasonably be expected to have worked another 39 years, but-for his passing. Based upon the Indiana minimum wage amount of $7.25 per hour, and an annual salary of $15,080.00 per year, possible lost future earnings alone far exceed the $75,000.00 jurisdictional amount. This is in addition to other claimed wrongful death damages including medical expenses, loss of love and care and other compensatory damages. Thus, Century Defendants make their good-faith estimate based on reasonable probability that the amount in controversy, even in light of the damages cap, will exceed the required jurisdictional amount.

**B.     Defendant McGalliard Guns and More is Fraudulently Joined.**

15.     Although Defendant McGalliard is an Indiana corporation with a principal place of business in Indiana (See Ex. A, Plt. Compl. ¶ 25), its citizenship must be disregarded for purposes of diversity jurisdiction because it has been fraudulently joined solely to defeat this Court's jurisdiction pursuant to 28 U.S.C. § 1332.

16.     It is well-settled that "[d]iversity jurisdiction cannot be destroyed by joinder of nondiverse parties if such joinder is fraudulent. In determining whether there is diversity of

Case 1:25-cv-00531-JPH-MJD    Document 1    Filed 03/20/25    Page 6 of 17 PageID #: 6


citizenship, parties fraudulently joined are disregarded." Gottlieb v. Westin Hotel Co., 990 F.2d 323, 327 (7th Cir. 1993).

17.     "Fraudulent joinder occurs either when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts." Id. (citing Poulos v. NAAS Foods, Inc., 132 F.R.D. 513, 516 (E.D. Wis. 1990); see also Conk v. Richards & O'Neil, LLP, 77 F. Supp. 2d 956, 960 (S.D. Ind. 1999). The Seventh Circuit has interpreted that possibility to mean "no reasonable possibility." Poulos v. Naas Foods, Inc., 959 F.2d 69, 73 (7th Cir. 1992).

18.     Fraudulent joinder can be shown by the moving defendant when he demonstrates that there is no chance of success by the Plaintiff against the fraudulently joined in-state defendant. Poulos v. Naas Foods, Inc., 959 F.2d 69, 73 (7th Cir. 1992).

19.     As the foregoing will demonstrate, Plaintiff's joinder of McGalliard does not deprive this Court of jurisdiction because no viable cause of action has been, or can be, asserted against McGalliard based on the events and the allegations contained within Plaintiff's Complaint.

        1.       Factual and Legal Allegations in Plaintiff's Complaint
                Pertaining to McGalliard.

20.     When deciding whether joinder is fraudulent and removal should be permitted, the court must look only to the facts pleaded in the complaint and determine whether a cause of action lies against the resident defendant. Poulos, supra, 959 F.2d at 74. Quite simply, there is no basis for liability against McGalliard as its only connection is the alleged sale of the unaltered pistol to Plaintiff.

21.     According to Plaintiff's allegations, the Decedent purchased the subject Pistol from Defendant McGalliard on February 14, 2023. (See Ex A, Plt. Compl., ¶¶ 26, 30, 51.) It is also alleged that McGalliard sells guns to the public. (Id. ¶ 30.) These are the only facts in the Complaint addressing Defendant McGalliard. Indeed, no acts of independent negligence or liability are asserted against

Defendant McGalliard. All that is asserted is general concepts of negligence that would not even apply to a non-manufacturing seller like Defendant McGalliard. (Id. ¶¶ 55-63, 118-122.)

22.     The Complaint specifically alleges multiple times that the Century Defendants "had actual knowledge of the defective condition" and "exercised substantial control over the testing, packaging, or labeling of the product." (Id. ¶¶ 39-42 and 56-59.) Tellingly, no such allegations, or any similar allegations, can be found against Defendant McGalliard. No knowledge of the alleged defect, and no control over the design or warnings of the product is alleged as to Defendant McGalliard.

23.     Plaintiff only makes general legal conclusions of negligence asserting all Defendants sold a defective pistol and failed to: (a) properly equip the subject Pistol with safety devices and systems; (b) take adequate corrective or preventative actions; (c) provide clear instructions and warnings; (d) adequately test the Pistol; and (e) warn of the defects. (Id. ¶ 60.) Separate claims for failure to warn and "vicarious liability" are asserted against the Century Defendants but not against Defendant McGalliard. (Id. Counts II -V.) Within these claims, it is asserted that the Century Defendants failed to take proper corrective action, failed to warn the Decedent and public in general, and failed apply good standards in importing and selling the Pistol. (Id. ¶ 114.) No such claims are made directly against Defendant McGalliard. Finally, Plaintiff also generally asserts without any specific claims or acts on the part of Defendant McGalliard that all Defendants breached express and implied warranties. (Id. ¶¶ 118-122.)

24.     As will be shown, both under the Indiana Products Liability Act ("IPLA"), which governs this mater, and independently, the allegations in Plaintiff's Complaint against McGalliard do not give rise to any legally cognizable cause of action under Indiana law. Accordingly, McGalliard is fraudulently joined and must be ignored for purposes of assessing whether the parties are diverse.

2.     The Indiana Products Liability Act ("IPLA") Governs
       this Matter and supersedes Plaintiff's Negligence Claim.

25.     The Indiana Supreme Court has clarified that "it was 'clear the legislature intended that the [IPLA] govern all product liability actions, whether the theory of liability is negligence or strict

liability in tort." <u>Ryan ex rel. Estate of Ryan v. Philip Morris USA, Inc.</u>, 2006 WL 449207, at *2 (N.D. Ind. 2006) (quoting <u>Stegemoller v. ACandS, Inc.</u>, 767 N.E.2d 974, 975 (Ind. 2002)). The IPLA applies to all claims based on a defective product. <u>Id.</u>

26.     The IPLA allows for only a single cause of action for actions in tort under products liability. <u>American Intern. Ins. Co. v. Gastite</u>, 2009 WL 1383277, at *2 (S.D. Ind. 2009) (holding that plaintiff's claims for strict liability, failure to warn and negligence must be merged into a single count.); <u>see</u> <u>Atkinson v. P & G-Clairol, Inc.</u>, 813 F. Supp. 2d 1021, 1027 (N.D. Ind. 2011) (holding that plaintiff's claims for strict liability, negligence and breach of warranty claims sounding in tort must be merged into a single count under the IPLA); <u>see</u> <u>also</u> <u>Cincinnati Ins. Companies v. Hamilton Beach/Proctor-Silex, Inc.</u>, 2006 WL 299064, at *2 (N.D. Ind. 2006). "[T]he IPLA provides a single cause of action for a user seeking to recover in tort for harm caused by a defective product…") (quoting <u>American Intern. Ins. Co. v. Gastite</u>, 2009 WL 1383277, at *3 (S.D. Ind. 2009).

27.     Where a complaint asserts common law negligence in a product liability setting, the negligence claim must be dismissed. <u>Ryan, supra</u>, 2006 WL 449207, at *5; <u>see also</u> <u>Gastite, supra</u>, 2009 WL 1383277, at *4 ("[T]he IPLA precludes a common law negligence claim for personal injuries caused by a product.").

28.     Here, this matter clearly sounds in product liability based on an alleged defective pistol. (<u>See</u> Ex A, Plt. Compl., ¶¶ 3 ["A defect in the weapon's firing mechanism caused its automatic safety devices … to fail."], 40 and 57 ["Century Arms, Inc., the importer of the subject Pistol had actual knowledge of the defective condition of the product"], 42 and 59 ["Century International Arms, Inc., the distributor of the subject Pistol, had actual knowledge of the defective condition of the product"], 53 ["As a result of the Drop-Fire Defect …"], and 60 ["Selling a defective Pistol"].) Accordingly, the IPLA governs this case, and Plaintiff's independent claims for common law negligence (Count I) and

breach of warranty (Count VI) must be dismissed, and can be disregarded here against Defendant McGalliard.

          3.      <u>Indiana Products Liability Law Contemplates Does Not Allow Recovery Against a Passive Seller.</u>

29.     Under the IPLA, only a manufacturer and the "principal distributor or seller over whom a court may hold jurisdiction" may be found liability in tort for a claimed defective product. <u>See</u> Ind. Code Ann. § 34-20-2-4. Indiana's Product Liability Act therefore allows a single recovery against a manufacturer or "principal distributor" for a claimed defective product, and a passive seller is not subject to liability where the manufacturer or "principal distributor" is subject to jurisdiction and joins issue in the action. <u>Gastite</u>, <u>supra</u>, 2009 WL 1383277 at *2; <u>see also</u> <u>Heritage Operating, L.P. v. Mauck</u>, 37 N.E.3d 514, 524 (Ind. Ct. App. 2015).

30.     Here, Plaintiff clearly claims that the Century Defendants are the "principal distributors" of the subject Pistol. First, it is repeatedly claimed that Century Arms imports the Pistol and Century International distributes the Pistol. (<u>See</u> Ex A, Plt. Compl., ¶¶ 16, 20, 39-42.) It is also claimed that the two entities are in a joint venture for such distribution. (<u>Id.</u> at ¶¶ 22-24, 87-117.) It is also claimed that in their roles as the importer and distributor, the Century Defendants "exercised substantial control over the testing, packaging, or labeling" of the Pistol and had "actual knowledge" of the claimed defect. (<u>Id.</u> at ¶¶ 40, 42, 57 and 59.) Indeed, Century is the exclusive importer and distributor in the U.S of Canik pistols.

31.     Since the Century Defendants, as the claimed "principal distributors" have appeared and are defending the action, there is no valid basis for any claim against Defendant McGalliard, the claimed passive seller of the subject Pistol.

32.     Accordingly, as a matter of law, there is no reasonable possibility that Defendant McGalliard can be held liable for Plaintiff's claims.

      4.     <u>Even if Considered Independently, Plaintiff's Claim of Negligence Against McGalliard (Count I) Fails to State a Legal Cause of Action</u>

33.     Even if not barred by the IPLA, Plaintiff fails to allege how Defendant McGalliard could meet the required statutory definition for an action based in negligence. Indeed, Plaintiff alleges no acts of independent negligence against Defendant McGalliard.

34.     Plaintiff's allegations, therefore, have the legal effect of penalizing the mere selling of a product which is the functional equivalent of an allegation of strict liability. "'A negligence action focuses on "the reasonableness of the [seller's] action in selling the article without a warning[,]' " whereas a strict liability case concerns 'the condition (dangerousness) of an article which is sold without any warning.'" <u>Heritage Operating, L.P. v. Mauck</u>, 37 N.E.3d 514, 520 (Ind. Ct. App. 2015) (quoting <u>Ortho Pharm. Corp. v. Chapman</u>, 180 Ind. App. 33, 39, 388 N.E.2d 541 (1979).

35.     It is well settled that "conclusory allegations fail to state a claim, are frivolous, and warrant dismissal." <u>Hart v. F.B.I.</u>, 91 F.3d 146 (7th Cir. 1996); <u>see also</u> <u>McReynolds v. Merrill Lynch & Co.</u>, 694 F.3d 873, 885 (7th Cir. 2012) (arguing threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, are not sufficient to state a cause of action upon which relief can be granted.). A general averment of negligence, in absence of specific facts to support same, is never sufficient to state cause of action. <u>Lynch v. Holy Name Church</u>, 133 Ind. App. 492, 499, 179 N.E.2d 754, 757 (1962) (holding that Plaintiff's count of Negligence against Defendant church failed to specify facts how Defendant was careless or negligent and therefore dismissed the action.).

36.     Here, none of the allegations in Plaintiff's Complaint demonstrate how Defendant McGalliard was negligent or breached its duty to Plaintiff or the Decedent. While knowledge of a defect and control is asserted against the Century Defendants, no such allegations can be found against Defendant McGalliard. General claims of negligence without specifying how Defendant McGalliard

met these allegations or the conduct at issue are merely conclusory and fail to state a claim upon which relief could be granted with reasonable possibility.

37.     Accordingly, independent of the IPLA, Plaintiff's claim for negligence fails to state a cause of action upon which any relief could be granted.

>    5.    Plaintiff's Implied Breach of Warranty Claim Against McGalliard (Count VI) Also Fails as a Matter of Law Because the Indiana Products Liability Act Shields Sellers from Liability.

38.     Under Indiana law, "a product liability action based on strict liability in tort cannot be maintained against a seller of a product unless the seller is also the manufacturer of the product or the part of the product alleged to be defective." Heritage Operating, L.P. v. Mauck, 37 N.E.3d 514, 523 (Ind. Ct. App. 2015) (quoting Ind. Code Ann. § 34-20-2-3.)

39.     "The theory of implied warranty in tort has been superseded by the theory of strict liability." TLB Plastics Corp. v. Procter & Gamble Paper Prods. Co., 542 N.E.2d 1373, 1375 (Ind. Ct. App. 1989) (quoting Fruehauf Trailer Div. v. Thornton, 174 Ind. App. 1, 9, 366 N.E.2d 21, 28 (1977)) see also 1st Call Home Health, LLC v. Porter, 964 N.E.2d 317 (Ind. Ct. App. 2012) ("[T]he appealed judgment converted Porter's breach of implied warranty claim against Appellants into one for strict liability under the IPLA."); TLB Plastics Corp. v. Procter & Gamble Paper Prods. Co., 542 N.E.2d 1373, 1375–76 (Ind. Ct. App. 1989) (explaining that tortious breach of implied warranty forms the theoretical basis for the strict liability rule adopted in Indian, and is not treated as a separate cause of action).

40.     ""[W]hatever advances had been made by the theory of breach of implied warranty in tort ... [c]learly, the ... theory if ever it was viable in this state, became merged with the theory of strict liability in tort." Abbott v. Starlinger N. Am., Inc., No. 08 C 642, 2010 WL 2553655, at *4 (N.D. Ill. June 16, 2010) (quoting Thiele v. Faygo Beverage, Inc., 489 N.E.2d 562, 577 (Ind. Ct. App. 1986)). "District courts and Indiana appellate courts have clarified that … breach of implied warranty claims

that sound in tort are redundant with strict liability claims under the IPLA…" <u>Atkinson</u>, 813 F. Supp. 2d at 1024. "Indiana courts have made it clear that a claim for breach of implied warranty fails to state a cause of action upon which a plaintiff can recover." <u>Lemon v. Anonymous Physician</u>, No. 1:04CV2083LJMWTL, 2005 WL 2218359, at *2 (S.D. Ind. Sept. 12, 2005).

41.     Here, Plaintiff's implied breach of warranty claims necessarily sounds in tort because not only did the parties not enter into agreement to create an implied breach of warranty sounding in contract, but Plaintiff neither alleges any agreement in the Complaint upon which an implied breach of warranty claim based in contract could be based.

42.     Because Indiana law treats claims for tortious implied breach of warranty claims as strict liability claims, and because Indiana Law precludes actions based in strict liability against non-manufacturing sellers of a product alleged to be defective, Plaintiff's claim of an implied breach of warranty against Defendant McGalliard is not a valid claim and must be dismissed as a matter of law.

> 6.     <u>Plaintiff's Express Breach of Warranty Claim Against McGalliard (Count VI) Fails as a Matter of Law Because Plaintiff's Complaint Fails to State a Legal Cause of Action</u>

43.     In Indiana,

> "(1) Express warranties by the seller are created as follows:
>
> (a)     any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b)     any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c)     any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
>
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he

> have a specific intention to make a warranty, but an affirmation merely
> of the value of the goods or a statement purporting to be merely the
> seller's opinion or commendation of the goods does not create a
> warranty."

Ind. Code Ann. § 26-1-2-313

44.     It is well established that a Complaint which fails to state sufficient facts stating some factual scenario where actionable injury has occurred will be dismissed for failure to state a claim. Trail v. Boys & Girls Clubs of Nw. Indiana, 845 N.E.2d 130, 134 (Ind. 2006). "Such a complaint must state facts, and not conclusions, or legal propositions." Dailey v. State ex rel. Bigler, 171 Ind. 646, 87 N.E. 4, 5 (1909). "It is a well-settled principle that a breach of warranty pleaded as a cause of action or defense must, to be good upon demurrer, aver the character and extent of the warranty, and the nature and particulars of the breach." Shirk v. Mitchell, 137 Ind. 185, 36 N.E. 850, 851 (1894).

45.     Here, the only facts which Plaintiff alleges against Defendant McGalliard is that it sold the Pistol to the Decedent and sells guns to the public. (See Ex A, Plt. Compl., ¶¶ 25, 26, 30, 51.) Nothing in these allegations, or elsewhere in the Complaint states with any specificity facts demonstrating how Defendant McGalliard created or breached an express warranty.

46.     Plaintiff neither alleges nor states how McGalliard made any statement or affirmation of fact concerning the Subject Pistol; how McGalliard made or provided any description of the goods or Subject Pistol; or how any model or sample was demonstrated in the underlying purchase of the Subject pistol. Plaintiff's allegations are empty and conclusory, merely reciting the legal elements or conclusions of the claim for an express breach of warranty without specifying any required actions by McGalliard to possibly be held liable.

47.     Accordingly, Plaintiff's claim for an express breach of warranty fails to state a cause of action upon which any relief could be granted.

### C.      There is Diversity of Citizenship Between Plaintiff and Defendants Century Arms and Century International.

48.      For purposes of diversity jurisdiction, a natural person is deemed to be a citizen of the state where he or she is domiciled.  Salem v. Egan, 803 F. App'x 928, 931 (7th Cir. 2020).  A corporation is a citizen of its state of incorporation as well as the state of its principal place of business.  28 U.S.C. § 1332(c)(1).  Based on these foregoing standards, the parties in this case are diverse.

49.      Upon information and belief, and as alleged in the Complaint, Plaintiff and the Decedent are, and at all times were, citizens of, and domiciled in, the State of Indiana.  (Ex. A, Plt. Compl. ¶¶ 14-15.)

50.      At the time of the commencement of this action, and at all times thereafter, the Century Defendants are Vermont corporations with their principal place of business in the State of Florida.  (Id. at  ¶¶ 15, 17.)

51.      For reasons stated above, the only two claims which Plaintiff asserts against Defendant McGalliard (negligence and breach of warranty), have no reasonable chance of success. Indiana law makes clear that Defendant McGalliard's citizenship, as a fraudulently joined defendant, may not be used for establishing citizenship among the parties.

52.      The remaining Defendants, Century Arms and Century International, are both citizens of Vermont and Florida and are diverse from Plaintiff (and the Decedent), a citizen of Indiana. As such, Diversity of Citizenship is established and removal of this case is proper.

## IV.      CONFORMITY WITH THE RULE OF UNANIMITY.

53.      The "rule of unanimity" requires that all the defendants to an action who have been served or otherwise properly joined in the action either join in the removal or file a written consent to the removal.  28 U.S.C.A. § 1446.

54.      The only other defendant in this action other than Century Defendants, which jointly file this Notice of Removal, is Defendant McGalliard who was fraudulently joined by Plaintiff. It is

not necessary, however, to obtain the consent to removal from a party who has been fraudulently joined. Siderits v. State of Ind., 830 F. Supp. 1156, 1160 (N.D. Ind. 1993). Therefore, Defendant does not need to obtain consent for removal from Defendant McGalliard.

55.    Nevertheless, out of an abundance of caution, Defendant McGalliard has given its consent to removal of this action to the Southern District of Indiana, Indianapolis Division. (See Ex. E, Defendant McGalliard's Consent to Removal.)

## V.    REMOVAL TO THIS DISTRICT IS PROPER.

56.    Pursuant to 28 U.S.C. §§ 1441, *et seq.*, the right exists to remove this case from the Delaware County Circuit Court, Indiana to the United States District Court for the Southern District of Indiana, Indianapolis Division which embraces the place where the action is pending.

## VI.    CONCLUSION.

57.    Pursuant to 28 U.S.C. § 1446, a copy of this Notice of Removal is being filed with the Clerk of Court for the Delaware County Circuit Court, Indiana, as required by law, and a copy of this Notice of Removal is being served on Plaintiffs. (See Ex. F, Notice of Removal to Plts. 3/20/2025.)

58.    Century Defendants reserve their right to amend or supplement this Notice of Removal and reserve all defenses.

59.    Century Defendants request a trial by jury.

**WHEREFORE**, Century Defendants pray that this case be removed from the Delaware County Circuit Court, Indiana to this Court, for the exercise of jurisdiction over this action as though this case had been originally instituted in this Court.

Dated: March 20, 2025

                              Respectfully submitted,

                         By:   *s/ Thomas Jarzyniecki*
                              Thomas Jarzyniecki, Jr.

**KIGHTLINGER & GRAY, LLP**
225 S. East Street
Suite 220
Indianapolis, IN 46202
Telephone: (317)638 4521
Fax: (317)636 5917
tjarzyniecki@k-glaw.com

and

Ryan L. Erdreich, Esq.
Pro-Hac Vice to Be Sought
**PISCIOTTI LALLIS ERDREICH**
30A Vreeland Road, Suite 300
Florham Park, New Jersey 07932
Telephone: (973) 245-8100
Fax: (973) 245-8101
rerdreich@pisciotti.com

ATTORNEYS FOR DEFENDANT
CENTURY ARMS, INC. &
CENTURY ARMS INTERNATIONAL, INC.

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on the 20th day of March 2025, a true and accurate copy of the above and foregoing was served via United States mail, postage prepaid, to the following:

Mr. Richard A. Cook
RICH COOK LAW
*Attorneys for Plaintiff*
9165 Otis Ave., Suite 235
Indianapolis, IN 46216
Telephone: 317-324-8828
Facsimile: 317-342-3071
rcook@richcooklaw.com
acook@richcooklaw.com

Mr. Brandon W. Ehrie,
*Attorneys for Defendant, McGalliard Guns and More*
LEWIS WAGNER, LLP
1411 Roosevelt Avenue, Suite 102
Indianapolis, IN 46201
Telephone: (317) 237-0500
Facsimile: (317) 630-279
behrie@lewiswagner.com
esears@lewiswagner.com

                                      By:  *<u>s/ Thomas Jarzyniecki</u>*
                                                 Thomas Jarzyniecki, Jr.